[Crim. No. 1182. Third Appellate District.—January 20, 1932.]

THE PEOPLE, Respondent, v. BRUCE HOWARD, Appellant.

A. M. Mull, Jr., for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was convicted of escaping from the surveillance of the prison guards of Folsom state prison, where he was serving a sentence for another felony of which he had been previously convicted. The information charges that the defendant "was then and there a prisoner, and as such lawfully *confined in* the State Prison at Folsom . . . for a term less than life; and . . . while at work outside such prison, towit: on the prison ranch . . . under the surveillance of prison guards of said Folsom Prison, did then and there . . . wilfully and unlawfully and feloniously escape from the surveillance of said prison guards".

It appears from a certified copy of commitment, which was received in evidence, that the defendant was convicted in Yolo County, on July 26, 1928, of the crime of forgery, and sentenced to imprisonment at San Quentin state prison for the term prescribed by law. He was transferred and received at Folsom state prison on January 28, 1930. This was testified to by Mr. Goranhson, a distributing officer of Folsom state prison, whose duty required him to personally receive and properly clothe all prisoners upon their arrival. On May 21, 1931, the defendant was still serving his sentence at the last-mentioned prison. The Folsom prison farm is situated outside the prison walls, but adjacent thereto. On the last-mentioned date the defendant, with other inmates of the prison, was engaged in working on this farm under the direction of prison guards. During that day the defendant escaped. When the prisoners were returned the defendant was missing. No prison guard saw him at the very time he was escaping. A thorough search of the premises was made and he was not found. He had escaped from the premises. The following day he was apprehended and returned to prison. He was subsequently charged under the provisions of section 106 of the Penal Code with

escaping from the surveillance of prison guards. From that judgment this appeal is prosecuted.

The appellant contends the information fails to state facts sufficient to constitute a public offense; that the judgment of conviction is not supported by the evidence; that the court erred in modifying an instruction which was offered by the defendant, and that the district attorney was guilty of prejudicial misconduct.

■ It is asserted the information is fatally defective because it fails to describe the nature of the crime for which the defendant was originally committed to state prison. It is unnecessary to specify in the information the particular crime for which the prisoner is committed to the state prison, for the purpose of charging him with the offense of escaping from the surveillance of prison guards. The gist of this offense is escaping from the guards. To constitute the crime it is only necessary that the prisoner should be an inmate regularly committed to the state prison. It does not matter what offense led to his incarceration, so long as he is committed for a term less than life. The information in the present case is couched in the language of section 106 of the Penal Code. It contains a statement of facts clearly informing the defendant of the offense with which he is charged. It conforms to the requirements of section 952 of the Penal Code. There is no merit in the contention that it fails to state facts sufficient to constitute a public offense.

■ There is no fatal variance between the allegations of the information and the proof merely because it does not appear that the defendant actually escaped from the "prison ranch". It is sufficient that the evidence shows he escaped from the surveillance of the prison guards. The evidence, however, does show he was taken by the prison guard, with other prisoners, to work on the prison farm, and that while they were so employed he escaped. It would be immaterial if he escaped on the way to or from the ranch, provided he was then under the surveillance of the guard. It sufficiently appears he was under the immediate supervision of the prison guard when he escaped. The information does recite that he escaped "while at work outside such prison, to wit: on the Prison Ranch . . . under the surveillance of prison guards". The phrase, "towit: on the.

Prison Ranch", may be deemed to be surplusage. There can be no doubt that the defendant escaped from the surveillance of the prison guards while he was outside the prison walls on the way to or from the ranch or while he was employed on the prison farm, May 21, 1931. Mr. Kinlock, who had charge of the prison camp near Sacramento, testified that he met a prison guard early in the morning of May 21st, following the escape of the defendant. He was told of the escape, and then proceeded on his way. When he arrived at a point on the highway about eight miles from Folsom state prison, he saw the defendant, dressed in prison garb, walking toward Sacramento. He hailed the defendant and asked him where he was going. The defendant started to run across the railroad track. Kinlock drew his revolver and commanded him to stop. The defendant did so. He was then taken into custody. He did not deny that he had attempted to escape. When he was asked why he left the prison, he replied that he did not know.

█ Neither is the information fatally defective because it alleges that at the time of the escape of the defendant, he was "then and there a prisoner, and as such legally *confined* in the State Prison at Folsom". It is argued that if the accused escaped while he was actually confined within the prison, he was guilty of the offense charged in section 105 of the Penal Code, and upon the contrary that he was not then guilty of escaping while he was outside of the prison, from the surveillance of the prison guards. The recitations of the information do conform to the language of section 106 of the Penal Code, charging that "while at work outside such prison . . . under the surveillance of prison guards", he escaped. The defendant could not have been misled by the language of the information. In substance it charges that during the period of time while the defendant was serving a sentence of imprisonment at Folsom state prison, he escaped from the surveillance of prison guards. This is the gist of the crime with which he is charged. █ The word "prison" as it is used in the statute evidently means the institution of state prison, and not merely the buildings within the inclosure which contain the prisoners' cells. In contemplation of law one may be deemed to be *confined* in the state prison in the service of

a sentence for the commission of a crime, even though he may be temporarily outside the prison walls under charge of prison guards working on the public highway or the prison farm. (*Bradford* v. *Glenn,* 188 Cal. 350 [205 Pac. 449]; *People* v. *Crider,* 76 Cal. App. 101 [244 Pac. 113].) The word "confined" as it is used in the information may be reasonably construed to mean the prisoner was engaged in serving sentence in the state prison at Folsom. ▮ He was specifically charged with escaping while he was "outside such prison". If there was any uncertainty regarding this language it could be reached only by demurrer. No demurrer was filed in the present case. This alleged uncertainty was therefore waived.

▮ There is no merit in the claim that the evidence fails to show the defendant was lawfully committed to Folsom state prison at the time of the escape of the accused. The evidence does show he was convicted of forgery, and that he was committed to San Quentin state prison. It also shows that he was subsequently received at Folsom state prison on January 28, 1930, and lawfully imprisoned there on a certified copy of the original judgment of commitment. Section 1202a of the Penal Code provides in part: "Until the termination of the sentence, the state board of prison directors may transfer the defendant from one state prison to the other as in the opinion of the board conditions may require." This statute gives the prison board full authority to transfer prisoners from one prison to another. No abuse of their discretion appears. We must assume, in the absence of proof to the contrary, that ample reason existed for this transfer, and that the prison board did not abuse its discretion. It follows that the evidence amply supports the allegation to the effect that the defendant was lawfully committed to Folsom state prison, and was engaged in serving his sentence at that particular institution at the time of his escape.

It is contended there is a lack of evidence to support the charge that the defendant escaped from the "surveillance of prison guards". The evidence does show that on May 21, 1931, "the defendant was an inmate at that time of the State Prison at Folsom, California", and during that day, that "he was sent to the ranch", in the custody of prison guards. The ranch where the prisoner was employed

under the supervision of prison guards is outside the prison walls, but adjacent thereto. He was not within the actual vision of the guards at the very time of his escape, but he was in their charge and under their immediate supervision. He disappeared that day. When it was discovered that he was missing, a thorough search for him was made. He was not found. He had escaped from the custody of the prison guards. He was not on the prison grounds. The following morning he was found and returned to the prison. The evidence leaves no doubt that the prisoner escaped from the charge of the prison guards while he was employed on the prison ranch under their supervision. ■

Section 106 of the Penal Code provides in part that, "Every prisoner committed to a state prison for a term less than for life, who escapes . . . while at work outside such prison under the surveillance of prison guards is guilty of a felony." The legislature did not intend, by the use of the word "surveillance" to limit the offense to an escape from the actual visual observation of the prisoner by the guards. That is too narrow an interpretation of the word. Surveillance in its ordinary definition, means, "oversight, superintendence, supervision". (Century Dict.) The synonyms of this word include, "supervise, oversee, overlook, control, direct, manage, conduct, to have charge of, to preside over". In contemplation of this statute a prisoner will be deemed to be "under the surveillance of prison guards", while he is employed outside the prison walls, under the supervision and care of prison guards, even when he is not actually within the range of their vision. In the case of *People* v. *Lewis*, 61 Cal. App. 280 [214 Pac. 1005], it is said:

"It is very plain that the word [surveillance] is not used in such limited sense . . . in section 106 of the Penal Code. . . . The lexicographer's definition of a word must yield to the plain meaning of the word as gathered from the context of the statute in which it is used."

■ The evidence therefore amply supports the charge that the defendant escaped from "the surveillance of prison guards".

■ It is urged that the court erred in eliminating that portion of the following instruction which appears in italics. The challenged instruction reads: "If you do not believe

to a moral certainty and beyond all reasonable doubt that Bruce Howard was at work outside the Folsom Prison *on the prison ranch* and that *at said place* he was under the surveillance of prison guards of said Folsom Prison, and that while under such surveillance he wilfully and unlawfully and feloniously escaped from under the surveillance of said prison guards, you must find the defendant Bruce Howard not guilty.''

The instruction was given to the jury as modified. It was not erroneous to modify it by striking therefrom the italicized portion thereof. It was immaterial whether he escaped from the surveillance of the prison guards while he was actually on the farm or not, so long as it appears he was then under their immediate supervision, as we have heretofore declared. The instruction contains a proper statement of the law. It is as favorable to the defendant as he was entitled to.

 The district attorney is charged with prejudicial misconduct in referring to the defendant, in the course of his argument to the jury, as a ''trusty'', and by saying that if the jury failed to convict the defendant in the present case, their verdict would encourage ''trusty'' prisoners to escape.

We are unable to see that this statement would prejudice the defendant. The reference to the prisoner as a ''trusty'' merely implied that he belonged to that class of prisoners to whom some privileges were accorded. (Webster's Int. Dict.; *People* v. *Flanigan,* 174 N. Y. 356 [66 N. E. 988].) The very fact that he was taken from the inclosure of the prison in charge of prison guards for the purpose of working on the farm, indicates that he did not belong to that class of incorrigible prisoners which was never trusted outside the prison walls. In this sense he was a trusty. At least we may not say this argument constituted prejudicial error.

 Nor do we think there was error in sustaining an objection to the defendant's question as to whether the guards, at all times, were able to see each individual prisoner while he was outside the prison walls. It is not denied that the prisoner was outside the prison walls under the supervision of the guards at the time he escaped. The

order sustaining the objection was harmless even though the question was competent.

The judgment and the order are affirmed.

Plummer, J., and Preston, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 4, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1932.