**GIESE v. UNITED STATES.**

No. 8702.

United States Court of Appeals
District of Columbia.

Decided June 19, 1944.

GRONER, Chief Justice, dissenting.

———◆———

Mr. Edmund D. Campbell, of Washington, D. C., for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and John C. Conliff, Jr., Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

MILLER, Associate Justice.

Section 11 of the Selective Training and Service Act [1] makes it a crime for any person knowingly to fail or neglect to perform any duty required of him, under or in execution of the Act, or rules or regulations made pursuant to it. From a judgment of conviction under the Act this appeal was taken.

The following facts are undisputed: (1) Appellant's local Selective Service Board in the District of Columbia issued an order which directed him to report for induction;[2] (2) he failed and refused to obey the order; (3) he acted knowingly and with the deliberate intention of disobeying the order. Under the circumstances, all the necessary elements of criminality were present and appellant was guilty as charged in the indictment unless an affirmative answer to each of his three following contentions is required. Those contentions are that: (1) It was his privilege, by way of defense to the accusation in the present criminal case, to challenge the validity of the order issued by the local board, requiring him to report for induction; (2) the order was void and ineffective; (3) hence it created no duty which he was required to perform, within the meaning of the statute.

In Falbo v. United States,[3] the Supreme Court, upholding a conviction in a similar case, rejected appellant's first contention. It said: "Even if there were, as the petitioner argues, a constitutional requirement that judicial review must be available to test the validity of the decision of the local board, it is certain that Congress was not required to provide for judicial intervention before final acceptance of an individual for national service. * * * The Act nowhere explicitly provides for such review and we have found

---

[1] Act of September 16, 1940, 54 Stat. 894, 50 U.S.C.A.Appendix, § 311: "Any person * * * who * * * evades registration or service in the land or naval forces or any of the requirements of this Act * * * or who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act * * * shall, upon conviction in the district court of the United States having jurisdiction thereof, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *."

[2] See Selective Service Regulations, Nos. 633.1 et seq.

[3] 320 U.S. 549, 554, 64 S.Ct. 346, 348.

nothing in its legislative history which indicates an intention to afford it. *The circumstances under which the Act was adopted lend no support to a view which would allow litigious interruption of the process of selection which Congress created.*" [Italics supplied.] Appellant seeks to avoid this decisive language by distinguishing the Falbo case on the theory that it "did not pass upon the validity of any conviction based on an order in which the statutory procedural requirements themselves had not been complied with." The language of the decision in that case, concerning this point, when read in its context, provides no support for appellant's contention. It reads: "To meet the need which it felt for mobilizing national manpower in the shortest practicable period, Congress established a machinery which it deemed efficient for inducting great numbers of men into the armed forces. Careful provision was made for fair administration of the Act's policies within the framework of the selective service process. *But Congress apparently regarded 'a prompt and unhesitating obedience to orders' issued in that process 'indispensable to the complete attainment of the object' of national defense. Martin v. Mott, 12 Wheat. 19, 30, 6 L.Ed. 537. Surely if Congress had intended to authorize interference with that process by intermediate challenges of orders to report, it would have said so.* Against this background the complete absence of any provision for such challenges in the very section providing for prosecution of violations in the civil courts *permits no other inference than that Congress did not intend they could be made.*"[4] [Italics supplied in part.]

The only distinction between the Falbo case and the present one lies in the reasons asserted to show invalidity of the local board's order. In the Falbo case the reason asserted was that the local board's order followed an erroneous classification made by it. In the present case the reason asserted is that the local board's order followed a classification erroneously made by a non-civilian appeals agency, hence that appellant's appeal to the President was still pending and the board was prohibited from issuing its order to report.[5] But in each case the order which constituted the basis of the criminal charge was made by the proper local board in the form prescribed by the applicable regulation and was valid on its face. Whatever the reason for its alleged invalidity or impropriety, the order was not subject to judicial review in the manner attempted by Falbo in his case or by appellant in the present case. The Supreme Court's language in the Falbo case is equally applicable here.

It is contended, also, that denial to appellant of this defense resulted in an unconstitutional deprivation of judicial due process. This argument was made and rejected in the Falbo case.[6] The cases of Panama Refining Co. v. Ryan,[7] Wichita Railroad & Light Co. v. Public Utilities Commission,[8] and the Morgan cases,[9] upon which appellant relies, were not criminal cases and do not even suggest that due process requires judicial review of administrative action by way of defense in a criminal trial. But the short answer to this contention is that—assuming a right in appellant to judicial review—denial to him of the defense in a criminal trial did not cut off that right. His appropriate remedy to vindicate whatever right he may have had was recognized by implication in the Falbo case[10] and directly in Billings

---

4 Falbo v. United States, 320 U.S. 549, 554, 555, 64 S.Ct. 346, 349.

5 Selective Service Regulations, No. 628.7.

6 Falbo v. United States, 320 U.S. 549, 554, 64 S.Ct. 346.

7 293 U.S. 388, 432, 55 S.Ct. 241, 253, 79 L.Ed. 446: "It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined, and show a substantial compliance therewith to give validity to its action. When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective." There was no such requirement in the present case.

8 260 U.S. 48, 59, 43 S.Ct. 51, 67 L. Ed. 124.

9 Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Morgan v. United States, 304 U.S. 1, 58 S. Ct. 773, 82 L.Ed. 1129; United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429.

10 Falbo v. United States, 320 U.S. 549, 557, 64 S.Ct. 346, 350. In his dissenting opinion, Mr. Justice Murphy said: "The power to administer complete justice and to consider all reasonable pleas and defenses must be presumed in the

v. Truesdell,[11] i.e., by writ of habeas corpus. The important consideration of the present case is that Congress deliberately and properly declined to authorize interference, by intermediate challenges, with the administrative process which it set up for mobilizing national manpower in the shortest practicable period. Criminal prosecution for failure to obey a local board's order was intended to expedite that process, not to delay it. So long as there remained available, to persons situated like appellant, remedial procedure for challenging the validity of the administrative process there was no denial of constitutional rights.

The law knows a number of situations in which, even in peacetime, the duty of the citizen to cooperate in effective law enforcement overrides his convenience. Thus, it is his duty to submit to arrest, upon a warrant valid on its face, even though the warrant may turn out later to be invalid.[12] A citizen who resists arrest under such circumstances may subject himself to punishment for so doing, in spite of his complete innocence of the original accusation upon which the warrant was issued.[13] So, also, one who is held upon a commitment, valid on its face, may be guilty of escape if he forces his way out of custody,[14] even though the commitment, when properly challenged, may prove to be insufficient.[15] Again, one who is a fugitive from a State in which he is unjustly accused of crime may, nevertheless, be subjected to extradition if the indictment and requisition are in proper form.[16] And he may become guilty of a crime, under the federal law, merely by fleeing to another State to escape prosecution.[17] Congress has not acted unreasonably, therefore, in requiring that the procedure which it has established for the selection, classification and induction of men into the armed forces in time of war shall not be interrupted by intermediate judicial review. In the present case, as in those used for comparison in this paragraph, there was legal process, valid on its face; namely, an order of appellant's local board requiring him to report. In the present case, as in those used for comparison, a remedy was available—appropriate both as to time and purpose—to challenge the validity of the order. No more is necessary to satisfy the requirements of due process.

In view of our rejection of appellant's first contention, it is not necessary to consider his second and third. However, it may be noted that our conclusion is strengthened in this respect by the decision of the Supreme Court in Bowles v. United States.[18] The facts of that case are practically identical with those of the present case. In his petition for rehearing Bowles urged, as does appellant here, that the order of the local board was void because it depended upon the action of the Director of Selective Service instead of an agency

absence of legislation to the contrary. Otherwise the absence of clear statutory permission would preclude court review of induction orders in habeas corpus proceedings following actual induction, a result which this Court's opinion presumably does not intend to infer. Judicial review in such proceedings has become well settled in lower federal courts."

[11] 321 U.S. 542, 64 S.Ct. 737.

[12] See generally, Perkins, The Law of Arrest, 25 Iowa L.Rev. 201; Barrett v. United States, 62 App.D.C. 25, 26, 64 F.2d 148, 149: "In other words, if the officer has reason to believe that the person he is about to arrest is a desperate character and acts accordingly, the officer is not to be convicted of assault because it subsequently develops that he was mistaken." United States v. Rice, C.C., 27 Fed.Cas. 795, No. 16,-153; United States v. Thompson, 28 Fed.Cas. 89, No. 16,484; Reilly v. United States Fidelity & Guaranty Co., 9 Cir., 15 F.2d 314; Erskine v. Hohn-

bach, 14 Wall. 613, 616, 20 L.Ed. 745. See Matthews v. Densmore, 109 U.S. 216, 219, 3 S.Ct. 126, 27 L.Ed. 912; Hofschulte v. Doe, C.C.N.D.Cal., 78 F. 436, 442; Snyder v. Hausheer, 8 Cir., 268 F. 776, 780; Bohri v. Barnett, 7 Cir., 144 F. 389.

[13] 18 U.S.C.A. § 245; D.C.Code 1940, § 33—414(n). Under such circumstances the arresting officer may use sufficient force to prevent escape, in some cases even to the extent of killing the person who resists arrest. Stinnett v. Virginia, 4 Cir., 55 F.2d 644, 646, 647; United States v. Rice, 27 Fed.Cas. 795, No. 16,153.

[14] 18 U.S.C.A. § 753h.

[15] Aderhold v. Soileau, 5 Cir., 67 F.2d 259.

[16] Munsey v. Clough, 196 U.S. 364, 373, 25 S.Ct. 282, 49 L.Ed. 515; Hogan v. O'Neill, 255 U.S. 52, 55, 41 S.Ct. 222, 65 L.Ed. 497; 18 U.S.C.A. §§ 652, 662. See Marbles v. Creecy, 215 U.S. 63, 67, 30 S.Ct. 32, 54 L.Ed. 92.

[17] 18 U.S.C.A. § 408e.

[18] 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194.

of appeal composed of civilians. In response to the petition for rehearing the Solicitor General filed a memorandum in which he contended that the use in the Act [19] of the words. "agencies of appeal" was not intended to apply to or include the Director of Selective Service when he, by authority of the President, renders decisions on appeals to the President.[20] The Supreme Court denied a rehearing without opinion.[21] If the question is still open it is one which will be appropriate for decision in a proper case, following compliance with an order to report; but it does not call for consideration or decision in the present case.

Affirmed.

GRONER, Chief Justice (dissenting).

Appellant was indicted and found guilty of a violation of the Selective Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. On the 16th of October, 1940, he registered in the District of Columbia and on March 6, 1941, was classified 1-A by his Local Board. Within the required time thereafter he appealed to the District of Columbia Appeal Board, claiming to be a conscientious objector. His claim in this respect was transmitted to the Department of Justice, in accordance with regulations, and referred by the Department to Mr. E. Barrett Prettyman as hearing officer. In due time the latter, though recognizing that Giese was sincerely and aggressively opposed to war, recommended against allowance of the claim on the theory that

Congress did not intend to authorize exemption unless,—as was not true in Giese's case—the objection was based on religious training and belief. As the result, the Appeal Board affirmed the Local Board classification. Thereafter Giese, under Regulation 628.1,[1] requested the Director of Selective Service for the District of Columbia to take an appeal to the President. This was allowed and resulted in the following order:

"Appeal No. 17448

"Appeal to the President of the United States

"Under the Provisions of the Selective Service Regulations District of Columbia, Board of Appeal No. 1, Local Board No. 2, District of Columbia. Registrant: Willis Erle Giese. Order No. 398. Classification on Appeal to the President: Class 1-A.

"This, the 19th day of February 1943.

"By Authority of the President

"(S) Lewis B. Hershey, Director."

Giese was notified of the President's classification on February 24, 1943, and on February 25th following was notified by Draft Board No. 2 to report for induction on March 10th. He refused to report and was indicted. On his trial, a jury being waived, General Hershey by stipulation of counsel testified that he was Director of Selective Service at the time of Giese's appeal to the President, and that he was at that time also an officer of the United States Army on active duty assigned to Selective Service; that the appeal was

---

[19] Selective Training and Service Act 1940, 54 Stat. 893, 50 U.S.C.A.Appendix, § 310(a)(2).

[20] Cf. United States v. George S. Bush & Co., Inc., 310 U.S. 371, 379, 380, 60 S.Ct. 944, 946, 84 L.Ed. 1259: "Since its creation in 1916 the Commission has acted as an adviser to the Congress or to the President. Under § 336 of the Act of 1930 [19 U.S.C.A. § 1336] the Commission serves the President in that role. It does not increase or decrease the rates of duty; it is but the expert body which investigates and submits the facts and its recommendations to the President. It is the judgment of the President on those facts which is determinative of whether or not the recommended rates will be promulgated. * * * And the judgment of the President that on the facts, adduced in pursuance of the procedure prescribed by Congress, a change of rate is necessary is no more subject to judicial review un-

der this statutory scheme than if Congress itself had exercised that judgment. It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review." Employers Group of Motor Freight Carriers, Inc., v. National War Labor Board, 79 U.S.App.D.C. —, 143 F.2d 145.

[21] Bowles v. United States, 319 U.S. 785, 63 S.Ct. 1323, 87 L.Ed. 1728.

[1] 628.1 (a) "When either the State Director of Selective Service or the Director of Selective Service deems it to be in the national interest or necessary to avoid any injustice, he may appeal to the President from any determination of a board of appeal. He may take such an appeal at any time."

duly received and reviewed by six members of his staff, all of whom were officers of the Army or Navy, assigned by him as a Board of Review to consider Presidential appeals and to make recommendations to him concerning them; that upon receiving the report of the Board he considered the file and recommendation and, by authority of the President, acted thereon and as Director of Selective Service signed the order on Giese's appeal, as it is set out in the forepart of this opinion.

Counsel for Giese thereupon moved the court to find him not guilty, upon the ground that the United States had failed to prove that he had violated any lawful order to report for induction. The ground of the motion was that the evidence showed that Giese was classified as 1-A by an agency of appeal not composed of civilians, in violation of the Selective Service Act, and hence that he had never been classified according to law, and consequently the order to report was without any foundation of support. The District Court overruled the motion and found Giese guilty and this appeal followed. The argument here is that since General Hershey, an officer of the Army, was the agency of appeal which classified Giese as 1-A, the classification was unlawful and his appeal, consequently, undisposed of, as a result of which the proceedings taken thereafter, including the order of induction issued by the Local Board, were altogether void and of no effect.

So far as I am advised, the question is new,[2] and the answer is by no means free of difficulty. The United States insist that the case of Falbo v. United States, 320 U. S. 549, 64 S.Ct. 346, 349, is controlling, but the point in that case, as I view it, was wholly different from the point in this. All that is held there is that the Congress has not authorized judicial review "of the propriety of a board's classification in a criminal prosecution for wilful violation of an order directing a registrant to report." The question here is whether there is a similar lack of judicial power in a case in which the order to report is challenged on the ground that *no* classification exists and the procedural steps under the law to obtain one are incomplete and pending. Considered in this view, I think there is a striking dissimilarity in the two situations, and I find nothing in the Falbo case to indicate that Congress has precluded judicial review in a case of failure in the procedural steps required as a condition to classification. Here, as we have seen, the point made is that the Local Board's order to report for induction was made at a time when the question of the registrant's classification was still pending and undetermined,[3] and this, of course, on the theory that the action of the appeal agency,—i.e. General Hershey—in reclassifying him as 1-A, was wholly ultra vires and void. The problem impels recourse to certain of the provisions of the Selective Service Act, as well as to the regulations.

By Section 10(a) of the Act, the President is authorized "to prescribe the necessary rules and regulations to carry out the provisions," and to this end to establish within the System "civilian local boards and such other civilian agencies, including appeal boards and agencies of appeal, as may be necessary to carry out the provisions of this Act." But the Act itself (Sec. 10(a) (2) expressly requires that both appeal boards and agencies of appeal shall be composed of civilians who are citizens of the United States, and paragraph 3, authorizing the President to employ active or retired officers of the Army, Navy, Marine Corps or Coast Guard in carrying out the provisions of the Act, *excepts* from the positions in which they may be so used "local boards, appeal boards, or agencies of appeal established or created pursuant to" the Act. Plainer words could hardly be found than are contained in these paragraphs to show that *all* appeals in *all* stages of the appeal must, except when the President acts personally, be determined by civilian citizens and not by the Army.

The President, as he had the right to do, authorized under certain conditions, an appeal to himself from a determination of

---

[2] A kindred question arose in Bowles v. United States, 319 U.S. 33, 63 S.Ct. 912, 87 L.Ed. 1194, but was not passed on by the Court because other grounds requiring affirmance were found.

[3] 628.7 of the Regulations provides: "Appeal to the President stays induction. The local board shall not issue an order for a registrant to report for induction either during the period afforded the registrant to take an appeal to the President or during the time such an appeal is pending. Any such order to report for induction which has been issued shall be ineffective and shall be canceled by the local board."

a State board of appeal, and provided the method and time of taking such appeal.[4] The regulation expressly declares that the local board "shall not issue an order for a registrant to report for induction * *. * during the period afforded * *. * to take an appeal to the President or during the time such an appeal is pending"; and expressly declared that an order to report issued during either of the periods allowed shall be ineffective and shall be cancelled.

And in the Bowles case, supra, the Supreme Court recognized these regulations as creating a de novo proceeding, as a result of which the acts of the local board and the State board are superseded and the final outcome made to depend upon the action of the President through the agency constituted by him to act for him. In consequence of this the classification originally made by the local board falls and a new classification must be made by the President. This appears to be the method which has been recognized and applied by the Selective Service throughout.

From all of this it would seem to follow that if in the present instance the agency designated by the President to consider the appeal made to him is the "agency of appeal" described in Section 10(a) (2) of the Act, then by the very terms of the Act, it can be constituted only of civilians who are citizens of the United States. That it is such an agency of appeal seems too clear for argument, for, as we have seen, the Act contemplates the establishment of civilian local boards, appeal boards and agencies of appeal as the entire machinery covering the field of induction of citizens into the armed services. That this is correct is confirmed by the fact that after the indictment in this case and after General Hershey had been subpoenaed as a witness, Section 10 of the Act was amended so as thereafter to require civilian personnel *only* on local boards and State boards of appeal, and the Report of the House Committee [5] shows that the amendment was considered necessary to assure Army and Navy personnel on the Presidential appeal board. I think it cannot be properly contended that the effect of the amendment was to give retroactive operation to the statute as amended. "Retroactive declarations of legislative intent preju-

dicial to those who have acted under an earlier statute whose construction seems clear, it would seem, ought not to be implied * * *." Haggar v. Helvering, 308 U.S. 389, 400, 60 S.Ct. 337, 342, 84 L.Ed. 340. Here, as I think, the original statute was clear. As a result of this amendment the law, as it now exists, permits such military personnel to act for the President, but it does not follow that because of it, as is suggested by counsel for the United States, if this case is reversed, Giese would be in precisely the same position he is in now. Obviously, this is incorrect, for Giese now faces prison if the judgment of the District Court is affirmed, whereas, if it is reversed, it by no means follows that when a proper board or lawful official delegated to act for the President has acted, Giese will not promptly obey the order to report for induction. But, however that may be, the situation here must stand or fall upon the legality of what has happened and not upon what may. Hence it is that the decision ought to rest upon the determination whether, in the facts as shown in this record, Giese violated the law. And if I am correct in thinking that his appeal has never been considered by a legal board and the order of induction made by the Local Board was prohibited by law until his appeal had been legally disposed of, it follows that the Board's order was without effect; and this in turn results from the well-established rule that a citizen may not be punished for the violation of the order of an executive officer or board, if it shall appear that the order was not within the authority of the officer or board. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L. Ed. 446; Wichita R. & Light Co. v. Pub. U. Comm., 260 U.S. 48, 43 S.Ct. 51, 67 L. Ed. 124; Morgan v. United States, 298 U. S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; Id., 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129.

The Supreme Court has not hesitated to set aside a conviction in a case in which it was shown that the jury was constituted in part of persons not qualified to perform jury service. Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392. Nor has the Supreme Court hesitated to reverse a conviction obtained on an indictment found by a Grand Jury in communities from which negroes were systematically excluded, for the reason

---

[4] Reg. 678.

[5] Report No. 787, H.R. 78th Congress, First Session.

that such a jury was illegally constituted. Hale v. Kentucky, 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050. Upon equally solid ground it would 'seem that like action should follow in the facts of this case.

I am accordingly of opinion that Giese was at all times prior to his indictment entitled to have his appeal submitted to an appeals agency composed of civilians, and that his classification for induction in the Army by General Hershey was contrary to the terms of the Act and the regulations, and consequently the induction order of the Local Board was illegal and imposed no obligation, and his refusal to obey constituted no violation of the law.

The view I have taken of the scope and effect of the Falbo case is, I think, supported by the view expressed of that case by the First Circuit in Chih Chung Tung v. United States, 142 F.2d 919, which I have just seen. And the reasoning and logic of that decision, in my view, definitely support the conclusions in this dissent.