## BAGLEY v. UNITED STATES.

### No. 10574.

Circuit Court of Appeals, Ninth Circuit.

June 14, 1944.

Rehearing Denied Aug. 2, 1944.

As Amended Sept. 20, 1944.

A. L. Wirin and J. B. Tietz, both of Los Angeles, Cal., and Wayne M. Collins and Theodore Tamba, both of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and R. B. McMillan and Joseph Karesh, Asst. U. S. Attys., both of San Francisco, Cal., for appellee.

Before DENMAN, STEPHENS and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Jack W. Bagley was convicted in the district court of knowingly and feloniously failing to comply with the order of the Selective Training and Service Board to report for induction into the armed services of the United States (Selective Training and Service Act of 1940, 54 Stat. 885, 50 U.S.C.A.Appendix, §§ 301–318, specifically § 311). He appeals from the judgment.

It is agreed that the order to report for induction was made and that he has not complied therewith. At the trial he claimed, and he makes the same claim here, that he "had not received a hearing by the Hearing

Officer such as the law granted him." Specifically, he claims that the order is void and, therefore, no order at all; that the Hearing Officer refused to inform the registrant, who was claiming to be a conscientious objector, as to the general nature and character of any evidence unfavorable to him; that the Hearing Officer misled the registrant by advising him that there was no evidence against him, after which the Hearing Officer based his adverse ruling upon evidence which he had notwithstanding his statement to the registrant. The latter further claimed that he was not given "a personal hearing by a local Draft Board," and at the trial written proposals of instructions, pertinent to such alleged defenses, were furnished the court with the request that they be given the jury. The court refused to give the proffered instructions, to which ruling exceptions were duly taken.

One of the first cases, if not the very first one, to reach an appellate court upon the subject of the Selective Training and Service Act of 1940 was a case before us entitled Local Draft Board v. Connors, 9 Cir., 124 F.2d 388. Therein we said, 124 F. 2d at page 390:

"It is within the congressional power to call everyone to the colors. No one under the jurisdiction of the sovereign nation, whatever his or her status, is exempt except by the grace of the government. In enacting the Selective Service measure Congress made specific exemptions, and, as well, prescribed certain classifications within which exemptions and deferments may be granted. It provided * * * for the selection of men 'in an impartial manner, under such rules and regulations as the President may prescribe, from the men who are liable for such training and service and who at the time of selection are registered and classified but not deferred or exempted' under Section 305 of the Act. The Regulations provide for classification (Regs. § XVIII), for an appearance before the Local Board (Regs. § XXVI), for an appeal to the Board of Appeal (Regs. § XXVII) and for an appeal in certain limited circumstances to the President (Regs. § XXVIII). Nowhere in the Act or in other statute is the District Court given specific authority over or concerning it. The Board's decision, under the limited appeal provided to a special Appeal Board and to the President is by the Act expressly made final."

The point was immediately before us as to whether we should decide the case upon our conclusion that the complaint stated no cause of action, assuming that the district court had jurisdiction of the subject matter, or whether we should first decide the jurisdictional question. As to this point we said, 124 F.2d at page 391:

"If we take the latter course we shall necessarily decide whether or not the District Court has any jurisdiction whatever in a case arising under the Selective Service Act other than by way of habeas corpus. We think it better not to do this where as in this case the broader question has not been satisfactorily explored in argument."

Thereafter, the point reached the Supreme Court of the United States in the case of Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, and, as we understand it, that case holds squarely against the premise that federal courts have any jurisdiction to review draft board orders except in independent proceedings wherein "due process" is the subject of inquiry.

Counsel for appellant frankly states that unless the instant case can be distinguished from the Falbo case, we must affirm. In argument he says: "The narrow claim asserted is that the denial to a registrant of procedural due process by a Selective Service Agency renders its order void; and its invalidity may be asserted in a defense to a criminal prosecution under the Selective Training and Service Act." Appellant argues that the Falbo case merely concerns an erroneous classification of the registrant, while in the instant case an entire procedural step required by the act has been omitted. As stated by appellant in his opening brief: "It is the defendant's [appellant's] claim that when he was denied a hearing of the *character* and *scope* promised him by the law he was given *no hearing* and having been given no hearing, he was denied 'due process.'" [Emphasis added.] He concludes that the evidence introduced in appellant's trial in the district court supports his claim that "due process" was not accorded appellant and that therefore the court committed reversible error by refusing to give the proffered instructions.

We think the position of appellant is untenable. He first admits that there was a hearing and concludes from the manner of the hearing that it was no hearing at all. His theory unjustifiably assumes the juris-

diction of the court to inquire into the regularity of the Board's order. Appellant's position is also untenable for the reason that the Falbo case precludes such inquiry since it is decided upon a principle applying as well to the facts of the instant case as to the facts of that case.

In the Falbo case the registrant, appellant in the circuit court [quoting from Falbo opinion, 320 U.S. at page 551, 64 S.Ct. at page 347], "* * * urged that the District Court had erred in refusing to permit a trial de novo on the merits of his claimed exemption. In the alternative, he argued that at least the Court should have reviewed the classification order to ascertain whether the local board had been 'prejudicial, unfair, and arbitrary' in that it had failed to admit certain evidence which he offered, had acted on the basis of an antipathy to the religious sect of which he is a member, and had refused to classify him as a minister against the overwhelming weight of the evidence."

It seems to us that if the order in the Falbo case would not cease to be an order upon the showing that it was based upon "antipathy" to appellant's religious sect, then by parity of reasoning the order in our case would not cease to be an order upon the showing suggested. The Supreme Court took no note of the theory advanced by appellant and went directly to the heart of the question. It said [320 U.S. at page 554, 64 S.Ct. at page 348, of the opinion]: "Even if there were, as the petitioner argues, a constitutional requirement that judicial review must be available to test the validity of the decision of the local board, it is certain that Congress was not required to provide for judicial intervention before final acceptance of an individual for national service. The narrow question therefore presented by this case, is whether Congress has authorized judicial review of the propriety of a board's classification in a criminal prosecution for wilful violation of an order directing a registrant to report for the last step in the selective process." [See Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 746, upon the subject of last step in the selective process.] The court in the Falbo case continued: "* * * But Congress apparently regarded 'a prompt and unhesitating obedience to orders' issued in that process 'indispensable to the complete attainment of the object' of national defense. Martin v. Mott, 12 Wheat. 19, 30, 25 U.S. 19, 30, 6 L.Ed. 537. Surely if Congress had intended to authorize interference with that process by intermediate challenges of orders to report, it would have said so.

"Against this background the complete absence of any provision for such challenges in the very section providing for prosecution of violations in the civil courts permits no other inference than that Congress did not intend they could be made. * * *"

Since the Falbo case, the Supreme Court has again spoken in Billings v. Truesdell, supra, 321 U.S. at page 557, 64 S.Ct. at page 746. It is there stated that the board's order together with the regulations required not only reporting at the station but also submission to induction and that a refusal to be inducted constitutes a civil and not a military offense. This is followed by the statement: "It should be remembered that he who reports at the induction station is following the procedure outlined in the Falbo case for exhaustion of his administrative remedies. Unless he follows that procedure he may not challenge the legality of his classification in the courts."

Here the appellant did not report to the station, and in this prosecution he may not challenge the legality of his classification by the board. Whether under the Billings case a registrant, who has reported for induction but has refused to obey the order to submit to induction, may challenge, in a criminal prosecution for such refusal, the legality of his classification by the board, is a question not before us.

### The Motion.

Coincident with the oral argument of the case on appeal before us appellant presented its motion to remand the case to the district court. We have treated the appeal first because in so doing, the facts need not be twice stated.

The basis of the motion is that appellant mistook the law when he failed to obey the order of the Selective Service Board to report for duty. He did not know at the time, he says, that his administrative remedies against obeying the order extended up to but not after the actual induction into the service as described in great particularity in the case of Billings v. Truesdell, supra, which came out sometime after the trial of his case. He now states by affidavit that he is willing to obey the order to report. It should not be understood that the affidavit indicates a willingness to be inducted into the services of his country.

However, his continuing unwillingness to be inducted is in no wise prejudicial. He has a perfect right, which we must and do respect, to hold and in the proper proceeding to assert his conscientious views.

 Appellant argues that he did not understand the applicable law until the Supreme Court made it plain by Billings v. Truesdell, supra. It may be that appellant misapprehended his administrative remedies and for that reason did not pursue them prior to his indictment for failure to obey the order to report, but we know of no power of an appellate court to nullify the action taken by the enforcement authorities and the courts upon a showing of such misapprehension. He chose to act as he did, and, as it seems to us, we have no power whatever to reverse the conviction and remand the case so that he may choose another course. Appellant has not as yet been inducted, and it is quite possible even after affirmance of the conviction that he has adequate means of testing whether or not he has been accorded due process. Although it cannot be used to the full extent of the writ of error, the writ of habeas corpus has of late years been greatly enlarged, and where the registrant has exhausted the remedies provided, he may test the "due process" question by resort to this remedial writ.

It is argued that former Chief Justice Hughes said in Patterson v. State of Alabama, 294 U.S. 600-607, 55 S.Ct. 575, 578, 79 L.Ed. 1082: "We have frequently held that in the exercise of our jurisdiction we have power not only to correct error in the judgment under review but to make such disposition of the case as justice requires. And in determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered. We may recognize such a change, which may affect the result, by setting aside the judgment and remanding the case so that the state court may be free to act." This statement was made in a case where two persons had been condemned to death after a state court trial in which they had been denied important constitutional rights. The two cases are not comparable. There is nothing in the instant case from which we could say, in the sense the expression was used by the great Chief Justice, that justice requires or authorizes us to act. No right has been denied appellant; no

change of law or fact has come about. We can appropriately refer in the same way to the other cases cited by counsel. The cases of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and Gros v. United States, 9 Cir., 136 F.2d 878, do not assist appellant. Those cases concerned violations of law in the use of oppressive and coercive methods by officers of the law in securing evidence against accused persons.

 Counsel's reference to our "broad authority of judicial supervision over the administration of criminal justice" (borrowed from the McNabb opinion) does not give us a free hand to reverse and remand. We have no power to grant the relief requested. Appellant may yet submit his grievance to the courts in an appropriate proceeding, or he may seek executive relief or both as he may be advised.

The motion is denied and the judgment is affirmed.