### UNITED STATES v. MADOLE.
### No. 9.

Circuit Court of Appeals, Second Circuit.
Oct. 30, 1944.

Edward I. Aronow, of New York City, for appellant.

K. Bertram Friedman and James B. M. McNally, U. S. Atty. for Southern District of New York, both of New York City, for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

PER CURIAM.

Madole, the accused, a "Jehovah Witness," was indicted for refusing to report to his local draft board. He had been classified as a "conscientious objector," and the board ordered him in accordance with the statute, Selective Training and Service Act of 1940, § 5(g), 50 U.S.C.A.Appendix, § 305(g), to appear before it on June 10, 1943, to be assigned to a Civilian Public Service Camp for some work of "national importance." He received the board's order on May 24, 1943, but, instead of appearing, he wrote a letter in which he refused to obey, (1) because "his work as a minister" made impossible any "occupation that would not allow him a reasonable time or opportunity to present the message that has been entrusted to the Lord's people at this time"; (2) because, if he complied, he would "in the eyes of the Lord, and by my own conscience become a covenant breaker"; and (3) because he had made a "covenant with the Lord to preach His gospel of the kingdom and to instruct the people." His testimony at the trial was in accord with this; to preach the gospel was higher than any possible secular duty. He did not, however, assert that he was the "minister" of any recognized religion or sect.

■ The order of the local board imposed upon him an unconditional duty to appear, regardless of any exemption to which he might eventually prove to be entitled. The Supreme Court has since the trial so settled the law. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346. Those whose consciences forbid them even to avail themselves of the prescribed procedure for establishing their immunity, must suffer the consequences; scruple, however tender we may be towards it, must have a limit, when it stands in the path of a vital national purpose.

■ The remaining objection is to the judge's refusal to charge the jury that if the accused believed that, if he obeyed the board's order, "he would go down to eternal damnation," they might consider that belief on the issue of "criminal intent." Instead of this the judge charged that such a belief would not "excuse him for his failure to comply with the statute," though he added, they might "take that into account." The meaning of the last we do not understand, and we shall take the action as a bare refusal, particularly as the judge in his colloquial charge had said that the jury should find the accused guilty, if he "deliberately and purposely stayed away." It is true that the word, "willfully," appearing in a statute as an element in the definition of the crime, has at times been held to imply more than mere knowledge of all the constitutive facts (United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381); indeed, it would be hard not so to read it, without writing it off as a rhetorical flourish. But the statute here involved does not contain the word, only the word, "knowingly," (§ 311, Title 50 U.S.C.A., War, Appendix); and there was no question that the accused at bar was acutely aware of all the facts. The request was apparently

based upon the notion that it excuses a crime, if the offender believes that his conduct was morally, or religiously, justified. It does not seem necessary to discuss such a position.

Judgment affirmed.